1  SHAUN KHOJAYAN (#197690)
   THE LAW OFFICES OF SHAUN KHOJAYAN
2   & ASSOCIATES, P.L.C.
   121 Broadway, Suite 338
3  San Diego, CA  92101
   Telephone:     (619) 338-9110
4  Facsimile:      (619) 338-9112
   E-Mail:  shaun@khojayan.com

Attorney for Defendant Bni

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JEFFREY T. MILLER)**

| UNITED STATES OF AMERICA, | Case No.: 08CR650JM |
|---|---|
| Plaintiff, | Date: April 11, 2008<br>Time: 11:00 a.m. |
| v. | **DEFENDANT BNI'S MOTIONS TO:** |
| SANDRA BNI (3), | 1) DISMISS COUNTS 3, 6, AND 9 BASED ON UNCONSTITUTIONAL VAGUENESS;<br>2) GRANT BILL OF PARTICULARS;<br>3) SEVER CASE FROM CO-DEFENDANTS;<br>4) COMPEL FURTHER DISCOVERY; AND<br>5) GRANT LEAVE TO FILE FURTHER MOTIONS. |
| Defendant. | |

Defendant Sandra Bni by and through her attorney, Shaun Khojayan, asks this Court pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law, and local rules for an order to:

1) Dismiss Counts 3, 6, and 9 Based on Unconstitutional Vagueness;

2) Grant Bill of Particulars;

3) Sever Ms. Bni's Case From Her Co-Defendants;

4) Compel Further Discovery; And

1.

1  　　　5) Grant Leave to File Further Motions

## STATEMENT OF FACTS

Ms. Bni is named in an indictment charging her with three counts of Harboring Illegal Aliens, 8 U.S.C.§ 1324(a)(1)(A)(iii), and Aiding and Abetting, 8 U.S.C.§ 1324(a)(1)(A)(v)(II). The following statement of facts has been compiled from information within the discovery that has been provided to defense counsel to date. Ms. Bni does not necessarily adopt these facts as her own, and reserves the right to take a contrary position at motions or trial.

　　　On February 25, 2008, Sandra Bni was present at a trailer located at Mountain Empire Campground, space #13 in Campo, California. At approximately 6:15 a.m., Border Patrol Agents allegedly received a citizen's report of a group of suspected illegal aliens loading into a vehicle in the Mountain Empire Campground near space #13. Upon arriving at the campground, agents identified a vehicle that matched the description given. They made contact with the vehicle and discovered 6 illegal immigrants contained within the vehicle. Agents placed all illegal aliens and the driver of the vehicle, Lawrence Doss, under arrest. Agents then approached the trailer located in space #13 of the campground and identified Matthew Kennedy, a person known by agents to be a prolific alien smuggler. Kennedy, the owner of the trailer, allegedly consented to the agents entering the trailer. Upon a search of the premises, agents discovered two illegal aliens and Ms. Bni in the trailer.

**I.**

**COUNTS 3, 6, AND 9 SHOULD BE DISMISSED BECAUSE 8 U.S.C. § 1324(a)(1)(A)(iii), HARBORING ILLEGAL ALIENS, IS UNCONSITUTIONALLY VAGUE AS WRITTEN AND AS APPLIED HERE**

Title 8 U.S.C.§ 1324(a)(1)(A)(iii), Harboring Illegal Aliens, is an unconstitutionally vague statute as written and as applied here. It is impossible to determine minimal guidelines as to what conduct is allowed and what is forbidden. The general principles of the void-for-vagueness make it clear that 8 U.S.C. § 1324(a)(1)(A)(iii) is constitutionally deficient.

　　　The Due Process Clause of the Fifth Amendment requires that statute clearly delineate the conduct it proscribes. *See Foti v. City of Menlo Park*, 146 F. 3d 629, 638 (9th Cir. 1998).

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

*Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (striking down California statute that required loiterers to provide "credible and reliable" identification to police officers). In *Kolender*, Justice O'Connor emphasized that the void-for-vagueness doctrine focuses on "the requirement that a legislature establish minimal guidelines to govern law enforcement." *Id.* at 358. When "the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Id*.

By vaguely prohibiting conduct that "conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection," without clarifying and defining these terms, Congress has engaged in precisely the type of imprecise draftsmanship that *Kolender* proscribes. By failing to state at least minimal guidelines as to the type of conduct that it sought to criminalize, 8 U.S.C. § 1324(a)(1)(A)(iii) has been randomly enforced.

What would an ordinary person understand "harbor," "conceal" or "shield from protection" to mean? Does providing humanitarian aid such as giving water to illegal aliens constitute "harboring," "concealing," or "shielding from protection?"

Title 8 U.S.C.§ 1324(a)(1)(A)(iii)'s potential for arbitrary and discriminatory enforcement is apparent in its application here. Where the statute does not define its terms, as is the case here, courts rely on the ordinary definitions of those terms. *Brewer v. Salyer*, 2007 WL 1454276 (E.D.Cal. May 17, 2007). There is no evidence that Ms. Bni harbored ("gave shelter or refuge to" or "to be the home or habitat of"), concealed ("to prevent disclosure or recognition of" or "to place out of sight"), or shielded ("to protect with or as if with a shield" or "provide with a protective cover or shield" or to cut off from observation") any of the illegal aliens in this case. *See Brewer v. Salyer*, 2007 WL 1454276 at *8 (defining the noted terms in the context of a civil suit for knowingly hiring aliens in violation of 8 U.S.C. § 1324(a)(3)(A)).

None of the allegations in the complaint or indictment sufficiently allege Ms. Bni violated these acts. In his complaint, the agent swears his belief that the evidence as related to Ms. Bni

3.

was that she may have opened the door to a trailer, which was not hers, and gave water to the illegal aliens. Such conduct plainly does not constitute "harboring, concealing, and shielding" as defined by an ordinary person or as established by the case law. *See Kolender*, 461 U.S. at 357; *Brewer v. Salyer*, 2007 WL 1454276 at *8.

Put simply, the vague language in 8 U.S.C.§ 1324(a)(1)(A)(iii) subjects defendants such as Ms. Bni to arbitrary decisions as to how the law should be enforced. As a result, the statute fails to pass constitutional muster and Counts 3, 6, and 9 must be dismissed.

## II.
### THE COURT SHOULD ORDER A BILL OF PARTICULARS TO PARTICULARIZE THE PRECISE THEORY OF THE MS. BNI'S LIABILITY FOR COUNTS 3, 6, AND 9

The defense requests, pursuant to F.R.Crim.P. 7(f), that the Court direct the government to file a bill of particulars concerning Counts 3, 6, and 9 to notify Ms. Bni of the precise nature of the charges against her and thereby give her an opportunity to prepare her defense. The bill requires the government to particularize the matters charged in the indictment, thus elucidating the theory of its prosecution. *Yeargain v. United States.*, 314 F.2d 881, 882 (9th Cir. 1963); *United States v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965).

The government, in Counts 3, 6, and 9, alleges that Ms. Bni violated the law when she allegedly "did conceal, harbor, and shield from detection and attempt to conceal, harbor, and shield from detection such alien[s] in a recreational trailer located at Mountain Empire Campground, space #13, in Campo, California."

However, neither the indictment, the complaint nor any discovery describes (1) how Ms. Bni concealed illegal aliens; (2) how Ms. Bni harbored illegal aliens; 3) how Ms. Bni shielded illegal aliens from detection; (4) how Ms. Bni knew or was in reckless disregard of the fact that the aliens were not lawfully in the United States, and (5) how Ms. Bni intended to violate the immigration laws of the United States. Counts 3, 6, and 9 of the indictment are so general that they do not sufficiently advise the defendant of the specific acts for which she is charged. The government must specify its allegations. *Yeargain*, 314 F.2d at 882.

## III.

## MS. BNI'S CASE MUST BE SEVERED FROM THAT OF HER CO-DEFENDANTS

The Court should sever Ms. Bni's case from that of her co-defendants because of improper joinder under Rule 8 and even if joinder is proper, relief from prejudicial joinder is required under Rule 14 and the Fifth and Sixth Amendments of the Constitution. The basis for severance is straight-forward: the two co-defendants are charged with a conspiracy to harbor aliens while Ms. Bni is not; and prejudicial evidence of this conspiracy will overlap upon Ms. Bni.

### A.     Defendants Are Improperly Joined Under Rule 8

Fed. R. Crim. P. 8(b) states "two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Under Rule 8(b), joinder of multiple defendants is proper "only if all the offenses charged in the indictment arose out of the same serious of transactions." *United States v. Satterfield*, 548 F.2d 1341 (9th Cir. 1977); *United States v. Ford*, 632 F.2d 1354 (9th Cir. 1980). There must be a logical connection shown between the offenses, mere factual similarity between the events, mere showing that the events occurred at the same time, and violations of the same statute is not sufficient. *United States v. Sarkisian*, 197 F.3d 966, 975 (9th Cir. 1999). A logical relationship is typically shown by the existence of a common plan, scheme, or conspiracy. *Id*.

Defendants must be severed because there is no logical relationship between their offenses. While Matthew Kennedy and Lawrence Doss have been charged with conspiracy, Ms. Bni is not included in that charge. Additionally, neither the indictment nor the complaint show evidence of a common plan or conspiracy between the co-defendants. Therefore, the indictment and the complaint fail to show the existence of a common plan, scheme, or conspiracy.

5.

**B.      Prejudicial Evidence Concerning Co-Defendants Would Be Inadmissible At a Separate Trial**

Although joinder is generally favored because it promotes efficiency, *United States v. Tootick*, 952 F.2d 1078, 1080 (9th Cir. 1991), Rule 14 provides that trials may be severed when it is apparent that a joint trial will cause prejudice. *United States v. Mayfield*, 189 F.3d 895 (9th Cir. 1999).   The Supreme Court has explained that a district court should grant a severance under Rule 14 if there is a "risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.*(quoting *Zafiro v. United States.*, 506 U.S. 534, 539 (1993)).  In determining whether a defendant has shown prejudice, the Ninth Circuit delineates certain guidelines which include "evidence inadmissible in a separate trial, not expressly related to the complaining defendant's guilt, but which creates a risk of guilt by association." *United States v. Cazier*, 2007 WL 1100680 (9th Cir. 2007) (citing *United States v. Catabran*, 836 F.2d 453, 460 (9th Cir. 1988)). Of primary importance in determining prejudice is the jury's ability to compartmentalize the evidence as it relates to each defendant. *See United States v. Vasquez-Velasco*, 15 F.3d 833, *United States v. Catabran*, 836 F.2d 453.

Joinder here is so prejudicial that it outweighs the interest of judicial economy and efficiency. *United States. v. Douglass*, 780 F.2d 1472, 1478 (9th Cir. 1986).  The government will seek to introduce evidence that defendant Matthew Kennedy is a prolific and well known smuggler in San Diego, California.  It is anticipated that border patrol agents will testify that they recognized Matthew Kennedy the instant he opened the door to the trailer located at space #13. Such evidence creates an illusion in the jurors mind that Matthew Kennedy is a veteran alien smuggler and grants credence to the agents belief that all defendants were involved in alien smuggling.  This evidence would not be admissible at separate trial and allows the jurors to believe Ms. Bni guilty through her mere association with Mr. Kennedy.

Trial of all defendants together will greatly prejudice Ms. Bni, introduce impermissible evidence, and prevent the jury from making a reliable judgment.  The evidence against her co-defendants will taint any fair trial Ms. Bni may have if the cases are not severed.

6.

## IV.

## MOTION TO COMPEL DISCOVERY AND PRESERVE EVIDENCE

Ms. Bni moves for the production by the government of the following discovery and for the preservation of evidence. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any government agency. *See generally Kyles v. Whitley*, 514 U.S. 419 (1995); *United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989).

(1) The Defendant's Statements. The government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the government agent; any response to any Miranda warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

(2) Arrest Reports, Notes and Dispatch Tapes. The defendant also specifically requests the government to turn over all arrest reports, notes, dispatch or any other tapes, and TECS records that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and *Brady v. Maryland*, 373 U.S. 83 (1963). The government must produce arrest reports, investigator's notes, memos from arresting Agents, dispatch and other tapes, sworn statements, and prosecution reports pertaining to the defendant and his arrest. *See* Fed. R. Crim. P. 16(a)(1)(B) and (C), Fed. R. Crim. P. 26.2 and 12(I).

(3) *Brady* Material. The defendant requests all documents, statements, agents' reports,

and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Under *Brady*, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. *United States v. Bagley*, 473 U.S. 667 (1985); *United States v. Agurs*, 427 U.S. 97 (1976).

(4) Any Information That May Result in a Lower Sentence Under The Guidelines. The government must produce this information under *Brady v. Maryland*, 373 U.S. 83 (1963). This request includes any cooperation or attempted cooperation by the defendant as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines. The defendant also requests any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant to any other application of the Guidelines.

(5) The Defendant's Prior Record. The defendant requests disclosure of her prior record. Fed. R. Crim. P. 16(a)(1)(B).

(6) Any Proposed 404(b) Evidence. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. The defendant requests such notice sufficiently in advance of trial in order to give the defense time to adequately investigate and prepare for trial.

(7) Evidence Seized. The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(C).

(8) Request for Preservation of Evidence. The defendant specifically requests the preservation of all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relate to the arrest or the events leading to the arrest in this case. This request includes, but is not limited to, the results of any fingerprint analysis, the defendant's personal effects, the vehicle, and any evidence seized from the defendant or any third party.

8.

08CR650JM

(9) **Tangible Objects.** The defendant requests the opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the government's case in chief or were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(C).

(10) **Expert Witnesses.** The defendant requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(E).

(11) **Evidence of Bias or Motive to Lie.** The defendant requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or his testimony.

(12) **Impeachment Evidence.** The defendant requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant. See Fed. R. Evid. 608, 609 and 613; *Brady v. Maryland*. In addition, Ms. Bni requests that the Assistant United States Attorney assigned to this case oversee a review of all personnel files of each agent involved in the present case for impeachment material. *Kyles v. Whitley*, 115 S. Ct. 1555 (1995); *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991); *but see United States v. Herring*, 83 F.3d 1120 (9th Cir. 1996).

(13) **Evidence of Criminal Investigation of Any Government Witness.** The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

(14) **Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling.** The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

(15) **Witness Addresses.** The defendant requests the name and last known address of

each prospective government witness. The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a government witness.

(16) Name of Witnesses Favorable to the Defendant. The defendant requests the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him or who was unsure of his identity, or participation in the crime charged.

(17) Statements Relevant to the Defense. The defendant requests disclosure of any statement relevant to any possible defense or contention that he might assert.

(18) Jencks Act Material. The defendant requests production in advance of trial of all material, including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid the possibility of delay at the request of defendant to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). *Campbell v. United States*, 373 U.S. 487, 490-92 (1963). In *United States v. Boshell*, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act.

(19) *Giglio* Information. Pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witnesses.

(20) Agreements Between the Government and Witnesses. The defendant requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the

advice not followed.

(21) Informants and Cooperating Witnesses. The defendant requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Ms. Bni. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. *Roviaro v. United States*, 353 U.S. 52, 61-62 (1957). The government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

(22) Bias by Informants or Cooperating Witnesses. The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. *Giglio v. United States*, 405 U.S. 150 (1972). Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

(23) Residual Request. Ms. Bni intends by this discovery motion to invoke her rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. Ms. Bni requests that the government provide her and her attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

## V.
## REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

The undersigned was recently appointed to represent Ms. Bni and requests additional time to review the file, discovery and any new additional discovery to draft any appropriate motions in Ms. Bni's defense. Therefore, it is requested that defense counsel be allowed the opportunity to file further motions based upon information gained through the discovery process.

## VI.
## CONCLUSION

For the foregoing reasons, Ms. Bni respectfully requests that the Court grant the above motions.

| | |
|---|---|
| Dated: March 28, 2008 | Respectfully submitted,<br>LAW OFFICES OF SHAUN KHOJAYAN<br>& ASSOCIATES, P.L.C.<br><br>_s/Shaun Khojayan_____<br>Shaun Khojayan<br>Attorney for Defendant Bni |

12.