KAREN P. HEWITT
United States Attorney
STEVEN DE SALVO
Assistant U.S. Attorney
California State Bar No. 199904
steven.desalvo@usdoj.gov
United States Office Building
880 Front Street, Room 6293
San Diego, California 92101
Telephone: (619) 557-7032

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>SANDRA BNI (3),<br><br>　　　　　　　Defendant. | Criminal Case No. 07CR0650-JM<br><br>DATE: May 23, 2008<br>TIME: 11 a.m.<br><br>GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO:<br><br>(1) DISMISS COUNTS 3, 6, AND 9 BASED ON UNCONSTITUTIONAL VAGUENESS;<br>(2) GRANT BILL OF PARTICULARS;<br>(3) SEVER CASE FROM CO-DEFENDANTS;<br>(4) COMPEL FURTHER DISCOVERY;<br>(5) GRANT LEAVE TO FILE FURTHER MOTIONS<br><br>TOGETHER WITH MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Steven De Salvo, Assistant United States Attorney, and hereby files its response and opposition to motions filed by defendant SANDRA BNI. Said response is based upon this response in opposition, the files and records of the case, and argument.

I.

**STATEMENT OF FACTS**

Defendant Sandra Bni ("Bni") has been indicted on three counts of Harboring Illegal Aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), and Aiding and Abetting, 8 U.S.C. § 1324(a)(1)(A)(b)(II). She has entered a not guilty plea to all counts.

On February 25, 2008, at approximately 6:15 a.m., Border Patrol Agents at the El Cajon Station received a citizen's tip that aliens were loading into a black metallic car in the Mountain Empire Campground, near Space #13. Border Patrol agents went to the area and saw a black metallic Thunderbird exiting the campground. Four passengers were ducking down in the vehicle in an attempt to hide. An agent stopped the car and found four persons inside the passenger compartment and two others in the trunk. Five of the six persons were aliens who admitted to being in the U.S. illegally; the sixth person was a lawful permanent resident. The driver was identified as co-defendant Lawrence Doss ("Doss").

During the apprehension of Doss and the aliens, Border Patrol agents also went to Space #13 in the campground. The campground manager told agents that he saw Hispanic males exit the trailer at Space #13 and get into the vehicle. Agents then knocked on the door of the recreational trailer, where Bni and co-defendant Matthew William Kennedy ("Kennedy"). Kennedy greeted them at the door. The agents recognized Kennedy as a prolific smuggler in the El Cajon area. Agents told Kennedy that the manager had observed aliens exit the trailer and enter a vehicle. D1 stated that only he and his girlfriend, Bni, were inside the trailer. Kennedy consented to a search. Agents found two aliens hiding in the shower.

In a post-<u>Miranda</u> statement, Kennedy admitted to four prior arrests for transporting aliens, but refused to answer questions about the latest arrest. However, in a prior post-Miranda statement following his arrest two weeks earlier, on February 14, 2008, Kennedy admitted that leaders of a smuggling organization had supplied vehicles to him for smuggling. He stated that, when picking up and transporting aliens, he was in constant radio contact with the smugglers. He also described the structure of the smuggling organization and said he was a "recruiter" of drivers.

In a post-Miranda statement, Doss stated that he was recruited to transport aliens by an unknown Hispanic male at the Golden Acorn Casino in Campo, California. He agreed to transport aliens for $100. He entered a residential trailer, where he saw Kennedy and Doss and numerous Hispanic persons inside. He stated that he later drove the vehicle loaded with these same Hispanic persons when he was caught.

All seven aliens admitted to being here illegally and stated that they crossed into the United States by foot. They stated that a guide led them to the trailer at the campground. Three aliens admitted paying between $1,500 to $2,700 to be smuggled. Based on photographic lineups, three aliens identified Bni as a woman who answered the door to the trailer and who invited aliens inside. Two aliens also positively identified Bni as a woman who provided food. Two aliens identified Doss as the driver of the vehicle they entered.

## II.

## POINTS AND AUTHORITIES

### A. DEFENDANT'S MOTION TO DISMISS COUNTS 3, 6, AND 9 ON 'VAGUENESS' GROUNDS IS WITHOUT MERIT

Defendant alleges that 8 U.S.C. § 1324(a)(1)(A)(iii) – the basis of the harboring allegations in Counts 3, 6, and 9 – is unconstitutionally vague because it is "impossible to determine minimal guidelines as to what conduct is allowed and what is forbidden." Defendant's Brief at 2. This argument is without merit.

"Where a law at issue does not implicate First Amendment rights, it may be challenged for vagueness only as applied, unless the enactment is impermissibly vague in all of its applications." Easyriders Foundation F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1493-94 (9th Cir. 1997). Therefore, Bni may only challenge § 1324 only as applied or if it is impermissibly vague in all its applications. Id.

Bni appears to challenge the statute as it is applied to her, arguing that "open[ing] the door to a trailer, which was not hers, and [giving] water to the illegal aliens" does not "plainly" constitute harboring, concealing, and shielding as defined by the case law or an ordinary person. First, the Ninth Circuit more than 50 years ago upheld the harboring statute, rejecting the claim that hit was "void for vagueness." Martinez-Quiroz v. United States, 210 F.2d 763 (1954).

1   Moreover, it is a cardinal rule that "harboring" broadly means "to clandestinely shelter, succor, and protect improperly admitted aliens." Susnjar v. United States, 27 F.2d 223, 224 (6th Cir. 1928); see also Black's Law Dictionary (defining "harbor" as "furnishing shelter, lodging or food clandestinely or with concealment). Certainly, Defendant's acts – opening a door for aliens into a trailer where they were concealed, and giving them food – provided shelter and succor. The fact that Defendant did not own the trailer is besides the point.

**B.   DEFENDANT'S MOTION FOR A BILL OF PARTICULARS SHOULD BE DENIED BECAUSE THE INDICTMENT SUFFICIENTLY INFORMS DEFENDANT OF THE CHARGES AGAINST HIM**

Defendant claims that she is entitled to a bill of particulars because "neither ... the indictment, the complaint, nor any discovery" describes how Bni "concealed," "harbored," or "shielded" aliens, nor describes how she knew they were unlawfully here and how she intended to violate the immigration laws. Defendant's Brief at 4. Defendant's request for a bill of particulars should be denied.

The purpose of a bill of particulars is to inform defendant of the charges against him, to minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction as a bar to another prosecution for the same offense. United States v. Ayers, 924 F.2d 1468 (9th Cir. 1991). The United States, in its indictment and discovery, has already given sufficient notice of the nature of the charges against her. In particular, the discovery included the statements of three material witnesses, who identified Bni as a person who opened the door to the trailer and invited them in. Additionally, two aliens identified Bni as a person who gave them food. Plainly, Bni has sufficient notice of both the nature and the basis of the charges against her.

**C.   DEFENDANT'S MOTION TO SEVER SHOULD BE DENIED**

The general rule of federal criminal law is that parties who are jointly indicted should be tried together. "Co-defendants jointly charged are, prima facie, to be jointly tried." United States v. Doe, 655 F.2d 920, 926 (9th Cir. 1981). Accord United States v. Tootick, 952 F.2d 1078, 1080 (9th Cir. 1991); United States v. Polizzi, 801 F.2d 1543, 1553 (9th Cir. 1986); United States v. Sears, 663 F.2d 896, 600 (9th Cir. 1982); United States v. Escalante, 637 F.2d

1197, 1201 (9th Cir. 1980); United States v. Silla, 555 F.2d 703, 707 (9th Cir. 1977). This is particularly true in cases, such as the case at bar, involving conspiracy or joint participants in a common scheme. Where the charges are to be proven by the same evidence, resulting from the same series of acts, there is a strong policy in favor of joint trials. United States v. Horton, 847 F.2d 313, 317 (6th Cir. 1988). Thus, joint trials of persons charged with committing the same offenses are the rule rather than the exception. United States v. Brashier, 548 F.2d 1315, 1324 (9th Cir. 1976), cert. denied, 429 U.S. 1111 (1977).

In order to depart from this rule and justify a severance under Rule 14, Defendant bears a heavy burden of demonstrating undue prejudice. See, e.g., United States v. Arbelez, 719 F.2d 1453, 1460 (9th Cir. 1983), cert. denied, 467 U.S. 1255 (1984). As further noted in United States v. McDonald, 576 F.2d 1350, 1355 (9th Cir.), cert. denied, 439 U.S. 830 (1978), the Ninth Circuit stated that "some prejudice necessarily inheres when defendants are joined for trials. . . . [I]f all that was necessary to avoid a joint trial were a showing of prejudice, then there would be few, if any, multiple defendant trials." Accordingly, Rule 14 motions are committed to the sound discretion of the trial court. McDonald, 579 F.2d at 1355. And the burden, which is placed squarely upon the defendant, see United States v. Bumatay, 480 F.2d 1012 (9th Cir. 1973), is a heavy one. United States v. Tousant, 619 F.2d 810, 813-14 (9th Cir. 1980).

Defendant claims that the co-defendants, Kennedy and Doss, should be severed because "there is no logical relationship between their offenses." Defendant's Brief at 5. This is belied by the indictment itself, which alleges, in Counts 3, 6, and 9, together harbored the aliens. Doss is accused of transporting the aliens. As the discovery has made obvious, Bni and Kennedy were responsible for sheltering the aliens until Doss arrived for transportation; clearly, there is a sufficient "common plan, scheme, or conspiracy" among the defendants, see United States v. Sarkisian, 197 F.3d 966, 975 (9th Cir. 1999), to justify joinder of all defendants.

Bni also argues that because Kennedy is a prolific and well-known smuggler, and because agents recognized him when they went to the trailer, this evidence would impermissibly taint her as "guilty through mere association." Defendant's Brief at 6. However, as Bni herself concedes, prejudice does not exist if the jury can compartmentalize the evidence as it relates to

1 each defendant. To the extent that there is a risk that the jury could misconstrue the evidence as
2 relating to Bni, the court can instruct the jury to consider the evidence only as it relates to
3 Kennedy. As noted above, there is always a risk of some prejudice when co-defendants are tried
4 together. Defendant bears the risk of showing undue prejudice, a heavy burden she has not met.

**D.   STANDARD DISCOVERY REQUESTS**

The United States has provided all written discovery to Defendant. The United States also has provided all video recorded statements by Defendants and material witnesses.

As to the specific discovery and evidentiary requests of Defendant, the Government responds as follows:

    1.   <u>The Government Will Disclose Information Subject To Disclosure Under Rule 16(a)(1)(A) and (B) Of The Federal Rules Of Criminal Procedure</u>

The government will disclose defendant's statements subject to discovery under Fed. R. Crim. P. 16(a)(1)(A) (substance of defendant's oral statements *in response to government interrogation*) and 16(a)(1)(B) (defendant's relevant written or recorded statements, written records containing substance of defendant's oral statements *in response to government interrogation*, and defendant's grand jury testimony).

    2.   <u>The Government Will Comply With Rule 16(a)(1)(D)</u>

The defendant has been provided with his or her own "rap" sheet and the government will produce any additional information it uncovers regarding defendant's criminal record. Any subsequent or prior similar acts of defendant that the government intends to introduce under Rule 404(b) of the Federal Rules of Evidence will be provided, along with any accompanying reports, at the reasonable time in advance of trial.

    3.   <u>The Government Will Comply With Rule 16(a)(1)(E)</u>

The government will permit defendant to inspect and copy or photograph all books, papers, documents, data, photographs, tangible objects, buildings or places, or portions thereof, that are material to the preparation of defendant's defense or are intended for use by the government as evidence-in-chief at trial or were obtained from or belong to defendant.

Reasonable efforts will be made to preserve relevant physical evidence which is in the custody and control of the investigating agency and the prosecution, with the following exceptions: drug evidence, with the exception of a representative sample, is routinely destroyed after 60 days, and vehicles are routinely and periodically sold at auction. Records of radio transmissions, if they existed, are frequently kept for only a short period of time and may no longer be available. Counsel should contact the Assistant assigned to the case two weeks before the scheduled trial date and the Assistant will make arrangements with the case agent for counsel to view all evidence within the government's possession..

    4.  <u>The Government Will Comply With Rule 16(a)(1)(F)</u>

The government will permit defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, that are within the possession of the government, and by the exercise of due diligence may become known to the attorney for the government and are material to the preparation of the defense or are intended for use by the government as evidence-in-chief at the trial. Counsel for defendant should contact the Assistant United States Attorney assigned to the case and the Assistant will make arrangements with the case agent for counsel to view all evidence within the government's possession.

    5.  <u>The Government Will Comply With Its Obligations Under Brady v. Maryland</u>

The government is well aware of and will fully perform its duty under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>United States v. Agurs</u>, 427 U.S. 97 (1976) to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist that is, or may be, favorable to the accused, or that pertains to the credibility of the government's case. As stated in <u>United States v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

611 F.2d at 774-775 (citations omitted). <u>See</u> also <u>United States v. Sukumolachan</u>, 610 F.2d 685, 687 (9th Cir. 1980) (the government is not required to create exculpatory material that does not

exist); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any pretrial privileges not contained in the Federal Rules of Criminal Procedure).

      6.      Discovery Regarding Government Witnesses

      a.      Agreements. The Government will disclose the terms of any agreements by Government agents, employees or attorneys with witnesses that testify at trial. Such information will be provided at the time of the filing of the Government's trial memorandum.[1] The Government will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972).

      b.      Bias or Prejudice. The Government will provide information related to the bias, prejudice or other motivation to lie of Government trial witnesses as required in Napue v. Illinois, 360 U.S. 264 (1959).

      c.      Criminal Convictions. The Government has produced or will produce any criminal convictions of Government witnesses plus any material criminal acts which did not result in conviction. The Government is not aware that any prospective witness is under criminal investigation.

      d.      Ability to Perceive. The government will produce in discovery any evidence that the ability of a government trial witness to perceive, communicate or tell the truth is impaired or that such witnesses have ever used narcotics or other controlled substances, or are alcoholics.

      e.      Witness List. The Government will endeavor to provide the defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987). Defendant, however, is not entitled to the production of addresses or phone numbers of possible Government witnesses.

---

[1] As with all other offers by the Government to produce discovery earlier than it is required to do, the offer is made without prejudice. If, as trial approaches, the Government is not prepared to make early discovery production, or if there is a strategic reason not to do so as to certain discovery, the Government reserves the right to withhold the requested material until the time it is required to be produced pursuant to discovery laws and rules.

1   See United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert. denied, 419 U.S. 834
2   (1974). The defendant has already received access to the names of potential witnesses in this
3   case in the investigative reports previously provided to him.
4       f.   Witnesses Not to Be Called. The Government is not required to disclose all
5   evidence it has or to make an accounting to the defendant of the investigative work it has
6   performed. Moore v. Illinois, 408 U.S. 786, 795 (1972); see United States v. Gardner, 611 F.2d
7   770, 774-775 (9th Cir. 1980). Accordingly, the Government objects to defendant's request for
8   discovery concerning any individuals whom the Government does not intend to call as
9   witnesses.
10      g.   Favorable Statements. The Government has disclosed or will disclose the names
11  of witnesses, if any, who have made favorable statements concerning the defendant which meet
12  the requirements of Brady.
13      h.   Review of Personnel Files. The Government has requested a review of the
14  personnel files of all federal law enforcement individuals who will be called as witnesses in this
15  case for Brady material. The Government has requested that counsel for the appropriate federal
16  law enforcement agency conduct such review. United States v. Herring, 83 F.3d 1120 (9th Cir.
17  1996); see, also, United States v. Jennings, 960 F.2d 1488, 1492 (9th Cir. 1992); United States
18  v. Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992).
19      Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and United States v.
20  Cadet, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information
21  favorable to the defense that meets the appropriate standard of materiality . . ." United States v.
22  Cadet, 727 F.2d at 1467, 1468. Further, if counsel for the United States is uncertain about the
23  materiality of the information within its possession in such personnel files, the information will
24  be submitted to the Court for in camera inspection and review.
25      i.   Government Witness Statements. Production of witness statements is governed
26  by the Jencks Act (Title 18, United States Code, Section 3500) and need occur only after the
27  witness testifies on direct examination. United States v. Taylor , 802 F.2d 1108, 1118 (9th Cir.
28  1986); United States v. Mills, 641 F.2d 785, 790 (9th Cir. 1981)). Indeed, even material

believed to be exculpatory and therefore subject to disclosure under the Brady doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act. See United States v. Bernard, 623 F.2d 551, 556-57 (9th Cir. 1979).

The government reserves the right to withhold the statements of any particular witnesses it deems necessary until after the witness testifies. Otherwise, the government will disclose the statements of witnesses at the time of the filing of the government's trial memorandum before trial, provided that defense counsel has complied with defendant's obligations under Federal Rules of Criminal Procedure 12.1, 12.2, and 16 and 26.2 and provided that defense counsel turn over all "reverse Jencks" statements at that time.

       7.       The Government Objects To The Full Production Of Agents' Handwritten Notes At This Time

Although the government has no objection to the preservation of agents' handwritten notes, it objects to requests for full production for immediate examination and inspection. If certain rough notes become relevant during any evidentiary proceeding, those notes will be made available.

Prior production of these notes is not necessary because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-607 (9th Cir. 1980); see also United States v. Griffin, 659 F.2d 932, 936-938 (9th Cir. 1981).

       8.       All Investigatory Notes and Arrest Reports

The government objects to the defendant's request for production of all arrest reports, investigator's notes, memos from arresting officers, and prosecution reports pertaining to the defendant. Such reports, except to the extent that they include Brady material or the statements of defendant, are protected from discovery by Rule 16(a)(2) as "reports . . . made by . . . Government agents in connection with the investigation or prosecution of the case."

Although agents' reports have already been produced to the defense, the government is not required to produce such reports, except to the extent they contain Brady or other such

material. Furthermore, the government is not required to disclose all evidence it has or to render an accounting to defendant of the investigative work it has performed. Moore v. Illinois, 408 U.S. 786, 795 (1972); see United States v. Gardner, 611 F.2d 770, 774-775 (9th Cir. 1980).

   9. Expert Witnesses.

Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial memorandum, the Government will provide the defense with notice of any expert witnesses the testimony of whom the Government intends to use under Rules 702, 703, or 705 of the Fed. R. of Evidence in its case-in-chief. Such notice will describe the witnesses' opinions, the bases and the reasons therefor, and the witnesses' qualifications. Reciprocally, the Government requests that the defense provide notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(C).

   10. Information Which May Result in Lower Sentence.

Defendant claims that the Government must disclose information about any cooperation or any attempted cooperation with the Government as well as any other information affecting defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland. The Government submits that it has no such disclosure obligations under Brady.

The Government is not obliged under Brady to furnish a defendant with information which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986), cert. denied, 479 U.S. 1094 (1987); United States v. Prior, 546 F.2d 1254, 1259 (5th Cir. 1977). Brady is a rule of disclosure. There can be no violation of Brady if the evidence is already known to the defendant. Assuming that defendant did not already possess the information about factors which might affect their respective guideline ranges, the Government would not be required to provide information bearing on defendant's mitigation of punishment until after defendant's conviction or plea of guilty and prior to his sentencing date. "No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains of value." United States v. Juvenile Male, 864 F.2d 641 (9th Cir. 1988).

  **B.** **LEAVE TO FILE ADDITIONAL MOTIONS**

The United States does not oppose Defendant's request for leave to file further motions, so long as discovery motions are based on discovery not yet received by Defendant.

## III.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the defendant's motions, except where not opposed, be denied.

DATED: May 20, 2008

                    Respectfully submitted,

                    KAREN P. HEWITT
                    United States Attorney

                    s/ Steven De Salvo

                    STEVEN DE SALVO
                    Assistant U.S. Attorney
                    steven.desalvo@usdoj.gov

|   |   |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | SOUTHERN DISTRICT OF CALIFORNIA |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0650-JM |
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| SANDRA BNI (3), | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

    I, STEVEN DESALVO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action. I have caused service of RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO COMPEL DISCOVERY AND LEAVE TO FILE FURTHER MOTIONS on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Shaun Khojayan**

**John C. Ellis, Jr.**

**Kerry Bader**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 20, 2008

                                              s/ Steven De Salvo
                                              STEVEN DE SALVO