J. Kerry Bader, Attorney at Law
964 Fifth Avenue, Ste. 214
San Diego, CA 92101-6128
619-699-5995, fax 619-699-5996
Attorney for Defendant Kennedy

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
(THE HON. JEFFREY T. MILLER)

| | |
|---|---|
| UNITED STATES OF AMERICA,  Plaintiff-Appellee, v. MATTHEW KENNEDY,  Defendant-Appellant. | U.S.D.C. No. 07CR0650JTM  MOTIONS TO DISMISS BASED ON SPEEDY Trial ACT, UNLAWFUL STOP, UNLAWFUL ARREST AND MOTION TO SUPPRESS STATEMENTS AND EVIDENCE AND MOTION FOR DISCOVERY AND MOTION FOR JOINDER |

TO:   KAREN HEWITT, UNITED STATES ATTORNEY, AND
      STEVEN DESALVO, ASSISTANT UNITED STATES ATTORNEY:

**PLEASE TAKE NOTICE** that as soon thereafter as counsel may be heard, the defendant, Matthew Kennedy, by and through his counsel, Kerry Bader, will ask this Court to enter an order granting the motion listed below.

DATED: August 24, 2008

/S/ Joan Kerry Bader
Joan Kerry Bader
Attorney for Defendant KENNEDY

## MOTION

1  Defendant, Matthew Kennedy, by and through his attorney, Kerry Bader, pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law and local rules, hereby moves this Court for an order to:

1) dismiss the Indictment;

2) suppress statements and evidence;

3) to compel discovery and

4) motion for joinder

This motion is based upon the instant motion and notice of motion, the attached statement of facts and memorandum of points and authorities, and any and all other materials that may come to this Court's attention at the time of the hearing on this motion.

Respectfully submitted,

Dated: August 24, 2008

**/s/Joan Kerry BAder**
**JOAN KERRY BADER**
Attorney for Defendant Kennedy

# I.

## Proceedings in this Court

On or about February 28, 2008, an Indictment was filed in the Southern District of California against three defendants, including Matthew Kennedy. There are nine charges total, involving an alleged conspiracy, and harboring, transporting and bringing in aliens for financial gain.

Mr. Kennedy is the only defendant charged in the conspiracy count.

All defendants have filed motions in this case. An evidentiary hearing was scheduled for June 20, 2008 and then July 24, 2008, but the hearing has been continued to August 29, 2008. The government has repeatedly made overtures to the defense, asserting that offers would be made, and put in writing for each defendant. This offer was made on the eve of the last hearing, which was rescheduled about four weeks ago. Despite the same assertions, the government has not made a written offer. The current hearing is scheduled for August 29, 2008 before this Court.

While motions are pending, the issue of the Speedy Trial Act and whether the "clock" is running vis-a-vis the defendants should be raised in this Courtt. Mr. Kennedy respectfully asks the Court to consider this as a request to dismiss the charges against him due to the violation of his Speedy Trial Rights. 18 USC section 3162(a)(2)

As the Court knows, the Speedy Trial Act requires that the trial of a defendant must commence within seventy days of the filing of the Indictment. 18 USC section 3161(h) [Speedy Trial Act]. Time can be excluded for various reasons, as set forth in 18 USC section 3161(h) and its specific provisions.

Specifically, the government relies on the oft-asserted provision that tolls the Speedy Trial Act when motions are pending before the Court. Here, all the co-defendants have filed motions and the government is relying upon these motions to toll the Speedy Trial clock for Mr. Kennedy. The government also relies on subsection 3161(h)(7) to toll the clock where codefendants are joined and no motion for severance has been granted.

**II**
### A. It Appears The Speedy Trial Clock is Running With Regard to Mr. Kennedy, and Thus the Indictment Against Him Should Be Dismissed.

The government will rely on section 3161(h)(7) of the Speedy Trial statute. That provision states that a "reasonable period of delay [is excludable] when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." Also, the government will rely on the pending motions to justify the stop of the clock.

However, the codefendants' excludability and the pending motions do not necessarily apply to Mr. Kennedy. "Excludability under this section [3161(h)(7)] is not automatic; the period of delay must be 'reasonable'" United States v. Hall, 181 F.3d 1057, 1061-1062 (9th Cir.1999). In Hall, the Ninth Circuit interpreted this particular section of the Speedy Trial Act and confirmed that an exclusion is limited by reasonableness. Id. Citations omitted. The Court held further that "reasonableness" of delay must be gauged on a case-by-case basis, given the fact-bound nature of the inquiry. Id.; United States v. Franklin, 148 F.3d 451, 456-457 (5th Cir, 1998). This analysis includes the determining whether the delay was necessary to achieve its purpose and if there was any actual prejudice to the defendant. Id. (Italics added).

The Court pointed out, correctly, that the general purpose of section 3161(h)(7) "is to facilitate the efficient use of judicial resources by enabling joint trials where appropriate." *See* S. Rep. 38 (1974)." Id.

### B. There is No Proper Reason to Toll the Clock

However, in Hall, the Ninth Circuit held that the Speedy Trial Act was violated because the purpose of the delays was not to carry along another defendant to a joint trial, but was instead the government delayed the case so that the co-defendant could negotiate a plea agreement whereby he would testify against Hall. This was found to be opposite the aim of ensuring a joint trial as the purpose of the delay was to *eliminate* the need for a joint trial. The Court held this was "neither necessary nor reasonable to delay Hall's trial for that purpose"and in fact it prejudiced Hall's defense by securing a

1 witness against Hall, his defense at trial was impaired. Id.

2 The government bears the burden of "stating and validating' the reason for
3 prosecutorial delay. United States v. Miller, 23 F.3d 194, 197 (8th Cir. 1994).

4 Here, Mr. Kennedy has filed motions.  The government has enjoyed the benefit of
5 the continued motion hearings, all the while expressing that an offer would be made to
6 the defendants but not formally making an offer.   The defense is aware that there are
7 "related" cases to the case at bar.  Also, it is believed that several of the defendants in
8 those cases may have entered into cooperation agreements with the government.

9 Assuming that the government in this matter has entered into negotiations with a
10 co-defendant to testify against Mr. Kennedy at trial, this is an improper, unreasonable
11 purpose for tolling the Speedy Trial Clock and continuing the motion hearings,
12 particularly when the government keeps suggesting they will make an offer to the
13 defendants but fails to do so and benefits from a last-minute continuance instead. [1]

14 Furthermore, Mr. Kennedy is prejudiced by this delay. 18 USC section 3162(a)(2)
15 an c)(1).  Recall that at least three factors are considered in determining if a defendant is
16 prejudiced by a violation of the Speedy Trial Act, including the seriousness of the
17 offense, the facts and circumstances of the case that lead to dismissal and the impact of
18 re-prosecution on the administration of the Speedy Trial Act and the administration of

---

[1]Assuming this motion is denied and one of the co-defendants' statements exculpates Mr. Kennedy, he respectfully asks the Court to sever his case pursuant to Rules 8 and 14 of the Federal Rules of Criminal Procedure.  The same if there is a showing of a prejudicial post-conspiracy statement by a co-defendant, to ensure Mr. Ramos' right to confrontation and his right to a fair trial and his right to present a defense. U.S.Const. Amnds. V and VI; Bruton v. United States, 391 U.S. 123 (1968); Cruz v. New York, 481 U.S. 186, 192-193 (1987)(Confrontation Clause forbids admission of non-testifying co-defendant's confession in joint trial even where jury receives limiting instruction); United States v. Gay, 567 F.2d 916 (9th Cir. 1978); United States v. Hernandez-Berceda, 572 F.2d 680 (9th Cir. 1978); United States v. Echeles, 352 F.2d 892 (7th Cir. 1965); United States v. Vigil, 561 F.2d 1316 (9th Cir. 1977); United States v. Cruz, 536 F.2d 1264 (9th Cir. 1976); United States v. Wood, 550 F.2d 435 (9th Cir. 1977)(Where co-defendant's statement would be substantially exculpatory and the defendant needs a severance to secure the co-defendant's testimony).

justice and prejudice to the defendant. United States v.Taylor, 487 U.S. 326, 343-44 (1988).

Here, the charges are very serious, and the prejudice to Mr. Kennedy stems from the unfair advantage the government may be acquiring by building its case against Mr. Kennedy *post-indictment* which is contrary to the purposes of the Speedy Trial Act, the Sixth Amendment and the Due Process Clause.

Furthermore, Mr. Kennedy has substantive defenses that will have been impaired by this type of delay. See, *e.g.*, United States v. Hall, *supra*, 181 F.3d 1057.

Accordingly, Mr. Kennedy respectfully asks the Court to dismiss the Indictment vis-a-vis Mr. Kennedy with prejudice.

### III.

**The Indictment Should Be Dismissed Because the Agents Unlawfully Arrested Mr. Kennedy or All of the Evidence and the Statements Stemming From that Illegal Arrest Should Be Suppressed**

Here, agents went to a trailer park very early in the morning and arrested Mr. Kennedy and Ms. Bni. Assuming the agents had no probable cause to arrest, the arrest was unlawful given its intrusive nature and its duration. This was an illegal arrest and as such, the fruits of the government's illegal conduct may not be used against Mr. Kennedy.

In Kaupp v. United States, 538 U.S. 626 (2003), the Supreme Court reversed a murder conviction and sentence of 55 years in a case where a young man was woken in the middle of the night by several sheriffs who told him "we need to go and talk." The young man said, "ok." Kaupp was in his boxer shorts and taken to the scene where the body had been found and then to the police station. The officers had no probable cause and no warrant for Kaupp's arrest.

The Supreme Court reversed, holding that this was an unlawful arrest and that the confession obtained had to be suppressed.

The confession was invalid because despite the fact that Kaupp had responded "Okay" to the sheriff's professed need to "go and talk," this response was merely

"submission to a claim of lawful authority." In other words, it was not a consent given voluntarily or knowingly, it was just an automatic response to the show of authority by the various armed, uniformed police officers who spoke in a "tone of voice indicating that compliance with the officer's request might be compelled." given the record in the case, it was debatable as to whether or not one of the officers had a gun drawn. Id. at 626-627.

The Supreme Court ruled the same in Johnson v. United States, 333 U.S. 10, where the police, smelling burning opium, knocked on Johnson's door and told her that she should consider herself under arrest because they were going to arrest her. The Court reversed the conviction because the police could have and should have gotten a warrant.

In addition, Johnson's "consent" to enter and to speak were not voluntary; her compliance was mere acquiescence to a claim of lawful authority on the apart of the police who gave her no choice but to open up her room and allow herself to be arrested and questioned without any advisal or respect of her rights.

Likewise, here, Mr. Kennedy, as in Kaupp, is a reasonable person did not feel free to get up and walk away from armed Border Patrol officers who wanted to investigate, talk and search.

As in Kaupp, "Kaupp's "Okay" in response to Pinkin's statement is no showing of consent under the circumstances. Pinkins offered no choice, and a group of officers rousing an officer out of bed in the middle of the night with the words, "we need to talk,: presents no option but 'to go.'" Id.

Finally, the Supreme Court pointed out the fact that the sheriffs routinely handcuff detainees for officer safety or the fact that Kaupp did not resist was no significant. Id. P.632. Referencing the officers's motivation for their personal safety has nothing to do with whether a detainee felt free to leave or to remain silent. "As for the lack of resistance [by Kaupp to the use of force], failure to struggle with a cohort or deputy sheriffs is not a waiver of Fourth Amendment protection, which does not require the perversity of resisting arrest or assaulting a police officer." Id.

The agents should have called for a warrant and Mr. Kennedy should have been

1  Mirandized as their statements were not given voluntarily.  Accordingly, the statements
2  and all evidence derived from this unlawful arrest must be suppressed.  <u>Wong Sun v.</u>
3  <u>United States</u>, 371 U.S. 471 (1963).
4      The suppression of statements and the fruits of the Border Patrol agents'
5  investigation at the Border Patrol station should also be suppressed.  The government
6  arrested Mr. Kennedy illegally.  They failed to respect his rights by failing to read him h
7  informed, voluntary and intelligent consent or any reading of his rights.  Then, they took
8  him to the station to investigate him further and based their investigation on the
9  information he gave them.  The evidence, including fingerprints and their fruits should not
10 be used against him as they are fruits of the unlawful arrest.     <u>Johnson v. United States</u>,
11 333 U.S. 10.  *See also*: <u>Taylor v.United States</u>, 457 U.S. 687 (1982) where the Supreme
12 Court reversed where police arrested Taylor without probable cause based on a jailhouse
13 tip.  They obtained his fingerprints and then confronted him with a matching set from the
14 crime scene and he confessed.  The Court held the fingerprints were poisonous fruit as
15 was the confession.
16     In addition, the cell phone and all of its contents that the agents say they retrieved
17 from Mr. Kennedy should be suppressed, for all of the same reasons mentioned in his
18 briefs.  *And see:* <u>United States v. Park</u>, 2007 U.S. Dist LEXIS 40596 (D.C.N.CA, May 23,
19 2007)(While cell phones are commonly seized as an object incident to a *valid* arrest, a
20 warrant should be obtained prior to investigating the contents of the cell phone)..

**IV.**

**Mr. Kennedy Renews His Request for a Hearing on the Legal Validity of the Stops of the Vehicles He Was Allegedly Driving Form the Underlying Allegations of the Conspiracy Charge and He Renews His Request For Discovery**

24     Mr. Kennedy has asked the Court to order the government to produce discovery,
25 including, but not limited to, any and all dispatch tapes, radio or telephonic
26 communications and/or digital or video recordings of the stops that comprise the basis for
27 the overt acts as well as his arrest statements.
28     Mr. Kennedy also asked the Magistrate Court for access to a material witness who

1  is a Lawful Permanent Resident who was not arraigned nor given legal counsel pursuant
2  to Rule 15 of the Criminal Rules of Procedure.  The court indiccated that it did not ahve
3  any information about that and stated further "I am not making any order about that at
4  all." P. 10, Transcript of hearing, April 24, 2008.
5       It is believed that the Border Patrol vehicle are equipped with cameras that record
6  their activity.  In addition, it is well known that telephonic, radio and dispatch recordings
7  are associated with Border Patrol stops throughout this region.  *See;*, e.g., United States v.
8  Hall, 2008 U.S. Dist LEXIS 7674 (D.C.S.Cal. 2008)(The Honorable M. James Lorenz,
9  presiding).  In Hall, the District Court held two separate evidentiary hearings regarding
10 the legality of the stop of Hall's vehicle on Highway 8.  At the second hearing the
11 government produced tapes of the communications between the officers which
12 contradicted their original testimony and which tended to prove there was no belief that
13 the driver had undocumented people within her car, as one agent was quoted saying,
14 "Let's take her down before she loads" and "Hey, go ahead and hit her up.  Maybe we'll
15 get lucky, no license or something. .. We can get her off the road."  And see United States
16 v. Isaac Ramos, 07cr3402IEG, where the government recently produced dispatch
17 recordings of the sightings, arrest and transportation of undocumented people by the
18 Border Patrol.           In this case, the government's discovery, outlined in Mr.
19 Kennedy's original motion, shows that the Border Patrol is trying to rely on some level of
20 suspicion that Mr. Kennedy was transporting aliens.  Mr. Kennedy has asked for the
21 dispatch tapes and any other recordings and he reiterates that request now.  It is highly
22 relevant, and even more so, because the reports on their face do not establish cause to stop
23 Mr. Kennedy.   It also presumed that the government will try to use this "evidence" in its
24 case-in-chief against Mr.  Kennedy, which must be prohibited as he has had no right of
25 access to any of this information. Arizona v. Youngblood, 488 U.S. 51(1988).
26      If they have been destroyed, this is further support for Mr. Kennedy's motion to
27 dismiss the Conspiracy count on grounds that the government has forfeited its right to
28 prosecute Mr. Kennedy, that there is no reliable evidence of such offenses and because the

government has destroyed or kept out of the defense' hands relevant, probative evidence that is required by the Fifth Amendment's Due Process Clause as well as the Sixth Amendments right to competent counsel, the right to raise a defense, and the right to confront one's accusers and to call witnesses in one's behalf.

By deporting the witnesses, the government has denied Mr. Kennedy his right under Federal Rule of Criminal Procedure Rule 15 to move for a deposition of prospective witnesses.  This is a right not just held by the government.  The removal of these witnesses from the country, and then the abrupt turn around in charging Mr. Kennedy is also a grounds for dismissal, not just on statutory grounds,  as the government has tampered with evidence and witnesses by making them unavailable which is a Constitutional violation. Deporting someone from the country is not a proper grounds for unavailability.

The government should not profit from this tactic as it violates both the Fifth and Sixth Amendments and is thus grounds for dismissal.

Dismissal is further warranted because the government cannot rely on hearsay alone to convict Mr. Kennedy.

The Supreme Court held in <u>Crawford v. Washington</u>, 124 S.Ct. 1354 (2004), that pursuant to the Sixth Amendment, pre-trial testimonial statements may not be admitted against a defendant at trial where the defendant has not had the opportunity to cross-examine the declarant. <u>Crawford</u>, 124 S.Ct. at 1374.  This is true even where the statements fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of trustworthiness." <u>Id.</u> at 1369, Police records and material witness statements taken by Border Patrol Agents will not do – they violate <u>Crawford</u> and they violate the rules of hearsay exceptions.   Police and other law enforcement reports do not fall under the public records exception because they are made by law enforcement officers in anticipation of litigation in a criminal case. FRE Rule 803(8) which, if subject to cross examination, allows public records hearsay, **but does not include** "*criminal [case] matters observed by police officers and other law enforcement personnel.*" (Emphasis

added).

Police reports, which the Supreme Court deems are hearsay, are thus inadmissible against Mr. Kennedy. "Testimonial hearsay" includes:

> *ex parte* in-court testimony or its functional equivalent--that is, material such as affidavits, **custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially** . . . extrajudicial statements . . . contained in formalized testimonial materials, such as **affidavits**, depositions, prior testimony, or **confessions**.. statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . **Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard."** (Emphasis added).

Thus, the Confrontation Clause does not permit testimonial statements to be admitted at trial without the "constitutionally prescribed method of determining reliability," *i.e.*, confrontation in the form of cross-examination at trial. Id. at 1374.

In this case, Mr. Kennedy was never given an opportunity to cross-examine the material witnesses whose statements would be used against him. To admit these statements would amount to structural error. Washington v. Recuenco, 126 S.Ct. 165 (2006). To use police officer testimony to do so amounts to layers of unauthorized hearsay. In Recuenco, the defendant argued, among other things, that the Blakely error in his trial amounted to structural error and that harmless error was not applicable. The Court declined to answer that question but did note that it has

> repeatedly recognized that the commission of a constitutional error at trial alone does not entitle a defendant to automatic reversal. Instead, 'most constitutional errors can be harmless.' *Neder v. United States*, 527 U.S. 1, 8 (1999)... 'If the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.'527 U.S. at 8... Only in rare cases has this Court held that an error is structural, and thus requires automatic reversal. n2. In such cases, the error 'necessarily renders a criminal trail fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'..... Id. at 2552.

Here, Mr. Kennedy at these alleged arrests, had no counsel on his side, which, even

without the Confrontation Clause violation, is structural error.

> Trial errors which require automatic reversal" include: <u>Johnson v. United States</u>, 520 U.S. 461 (1997). These include violations such as the complete denial of counsel (<u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963)); having a biased trial judge (<u>Tumey v. Ohio</u>, 273 U.S. 510 (1927)); racial discrimination in selection of a grand jury (<u>Vasquez v. Hillery</u>, 474 U.S. 254 (1986)); denial of self-representation at trial (<u>McKaskle v. Wiggins</u>, 465 U.S. 168 (1984)); denial of a public trial (<u>Waller v. Georgia</u>, 467 U.S. 39 (1984)); and a defective reasonable doubt instruction (<u>Sullivan v. Louisiana</u>, 508 U.S. 275 (1993)).

Constitutional violations that defy harmless error review are those that contain a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Fulimante, supra*, at 30. Such errors "infect the entire trial process." *Brecht v. Abrahamson*, 507 U.S. 619...(1993) and necessarily render a trial fundamentally unfair,"....<u>Id.</u> at 7-9. Here, it is fundamentally unfair to use the police reports or material witness statements against Mr. Kennedy because doing so would violate the Sixth Amendment and <u>Crawford's</u> core guarantee of the most fundamental right to cross examine one's accusers.

Mr. Kennedy renews his request for the material witness statements and immigration and criminal history.

Likewise, he makes this request specifically in regard to Maria Martinez-Contreras, one the persons found on her knees in the front seat of the car which Mr. Doss was driving, who happens to be a Lawful Permanent Resident. The government provided the defense with the address of Ms. Martinez-Contreras but she does not reside at the address given and as a Lawful Permanent Resident of the United States, she is required to maintain her current address with the government. Also, if she is a witness for the government, they should know where she is.

Also, in the event Ms. Martinez is a Confidential Informant, Mr. Kennedy has a right to know. He now renews his "<u>Rovario</u>" motion that was made in his original discovery motion, filed May 19, 2008, reflected in docket number entries 43 and 55.

In summary, Mr. Kennedy makes this request for disclosure of the names and addresses of Ms. Martinez and any other informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant[s] who was a percipient

witness in this case or otherwise participated in the crime charged against Mr. Kennedy. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. The defense needs the information so that it may prepare to defend the case. Without the names and information that these people are allegedly supplying, there can be no meaningful preparation or defense or trial, and will result in various constitutional violations. Roviaro v. United States, 353 U.S. 53, 61-62 (1957). The government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

Mr. Kennedy requests discovery regarding any express or implicit promise, understanding, offer of immunity in any forum and jurisdiction, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

The defense at this stage in this proceedings really has a need for discovery of bias by Informants or Cooperating Witnesses. The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972). Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities. In addition, Mr. Kennedy requests any and all evidence of any witness' inability to tell the truth, any and all investigations or arrests or convictions and any and all medical, psychological, drug or alcohol-related problems.

Mr. Kennedy has a right to evidence of the material witnesses' criminal histories and immigration violations. He is entitled under FRE, Rule 609 to impeach the witnesses who are being used by the Government against him. FRE Rule 608 might also come into play and the defense has every right to present character evidence and conduct of

witnesses.

In addition, the use of the Border Patrol's rendition of what Mr. Kennedy supposedly said would violate the Fifth Amendment and the Fourth Amendment's guarantee of the right to remain silent and to not incriminate one's self and the right to make statements voluntarily, not against one's will.

Indeed, it is difficult to imagine a trial so unfair, such as one in which a defendant is not entitled, at anytime, anywhere in the process, much less the trial itself, to confront the evidence, testimony and witness that the Government is now trying to use against him.

Finally the statements allegedly made by Mr. Kennedy and the material witnesses should be suppressed not only because they are derived from police reports, but because there is no foundation for their admission at trial. In United States v. Orrellano-Blanco, 294 F.3d 1143 (9th Cir. 2002) the defendant was indicted for marriage fraud and making false statements to an immigration officer. The Ninth Circuit said it was error to admit a signed statement made by the Defendant to an immigration officer where there was no proper foundation indicating the defendant had really signed the document. The same issue lies in this case. There is no evidence, anywhere, that Mr. Kennedy adopted the statements attributed to him by the Border Patrol.

The Ninth Circuit specifically stated that the foundational requirements were not met in Orellano-Blanco, because there as no admissible foundation adequate to demonstrate that the defendant adopted the statements as his own. Furthermore, there was insufficient proof the signature was the defendant's, in part because of the language barrier, and there was insufficient inferences that the document was actually read to the defendant by the immigration officer. Furthermore, there was no evidence the statement was a verbatim recording of the what the defendant had said to the immigration officer.

## V.

## MOTION FOR JOINDER

Mr. Kennedy respectfully asks the Court to grant his motion for joinder to Ms. Bni's motion to dismiss based on the unconstitutionality of the Harboring Counts (Counts 3,6 and 9), as well as her motion for Bill of Particulars.

## VI.
## CONCLUSION

Mr. Kennedy respectfully asks this Court to grant his motions.

DATED: August 24, 2008          /s/Joan Kery Bader

                                Joan Kerry Bader
                                Attorney for Mr. Kennedy